IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

ABSOLUTE TRADING CORP., a Florida
corporation, d/b/a ABSOLUTE TRADING,
INC.,    and    f/k/a    ABSOLUTE
INTERNATIONAL TRADING CORP.,

      Plaintiff,

v.

PDVSA SERVICES, INC., a Delaware
corporation, and BARIVEN, S.A., an
agency or instrumentality of the Venezuelan
government,

      Defendants.

_____/

## COMPLAINT

      Plaintiff, Absolute Trading Corp., d/b/a Absolute Trading, Inc., f/k/a Absolute International Trading Corp. ("ABT"), hereby sues Defendants, PDVSA Services, Inc. ("PSI") and Bariven, S.A. ("Bariven") and, alleges as follows:

## PRELIMINARY STATEMENT

      1.      This is an action for breach of contract based on three purchase orders for powdered milk.[1] PSI and Bariven jointly issued the purchase orders to ABT in Miami, Florida. ABT acknowledged the purchase orders, completely performed under two of the purchase orders, and was in the process of performing under the third and last purchase order. Defendants, unjustifiably refused to accept the final shipment under the last purchase order and failed and refused to pay ABT the agreed upon price therefor. Thus, Defendants anticipatorily

---

    [1]      To be clear, although three purchase orders exist between the parties, this lawsuit addresses only the third purchase order because the parties completely performed all obligations under the first and second purchase orders.

repudiated the agreement and materially breached the agreement, which caused substantial injury to ABT.

## THE PARTIES

2.      ABT is a corporation organized and existing under the laws of the State of Florida and maintains its principal place of business at 8140 NW 74th Avenue, Unit 9, Medley, Florida 33166.

3.      PSI is a corporation organized and existing under the laws of the State of Delaware and maintains its principal place of business at 1293 Eldridge Parkway, Houston, Texas 77077.

4.      Bariven is an agency or instrumentality of a foreign state as defined in 28 U.S.C. § 1603 (b).  Specifically, Bariven was and is a separate legal person in the form of a corporation ("sociedad anonima") organized and existing by virtue of the laws of the Bolivarian Republic of Venezuela, and functions as an organ of the Venezuelan Government and/or a majority of its ownership interest is owned by the Government of Venezuela or a political subdivision thereof, and maintains its principal place of business at Torre Pequiven, Pisos 10 y 11, Av Francisco de Miranda, Caracas DF, Venezuela.  Bariven is not a citizen of any State of the United States, nor is it created under the laws of any third country, but transacts substantial and not isolated business in the United States by contracting with parties in the United States, including the State of Florida.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter in accordance with 28 U.S.C. § 1332 because this matter involves a dispute between a Florida corporation, a Delaware corporation and

a citizen of a foreign state, thereby a complete diversity of citizenship exists, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.       Additionally, the Court has original subject matter jurisdiction under 28 U.S.C. § 1330 because this action involves a dispute against Bariven, an agency or instrumentality of a foreign state as defined in 28 U.S.C. § 1603 (b), which under 28 U.S.C. § 1605 (a)(2) is not immune from the jurisdiction of the courts of the United States, or of this State as this action is based upon a commercial activity carried on in the United States or upon an act performed in the United States in connection with a commercial activity outside of the United States, or upon an act outside the United States that was taken in connection with a commercial activity outside of the United States that caused a direct effect in the United States.

7.       This Court has personal jurisdiction over PSI and Bariven pursuant to §§ 48.193(1)(a), (1)(g), and (2), Florida Statutes.  In particular, ABT's claims arise from: (1) Defendants operating, conducting, engaging in, or carrying on a business or business venture in Florida; (2) Defendants breaching a contract in Florida by failing to perform acts required by the contract in Florida,; and (3) Defendants engaging in substantial and not isolated activities in Florida.  In addition, this Court has personal jurisdiction over Bariven pursuant to 27 U.S.C. § 1330 (b).  PSI and Bariven have established sufficient minimum contacts with the State of Florida such that subjecting them to jurisdiction in Florida comports with constitutional due process requirements.  PSI and Bariven voluntarily entered into various contracts requiring performance in Florida.  Accordingly, it was foreseeable that they could reasonably anticipate being sued in a Florida court.

8.       Defendants have already submitted themselves to the jurisdiction of this Court by admitting, in the matter styled Validsa, Inc. d/b/a Dexton Validsa and Dexton, S.A. v. PDVSA

Services, Inc. and Bariven, S.A., Case No.: 08-CV-21682-JLK, and in the matter styled Exim Brickell, LLC v. PDVSA Services, Inc. and Bariven, S.A., Case No.: 09-CV-20915-ASG, that they have done substantial and not isolated activity in Florida and that this Court has personal jurisdiction over them.

9.     Venue is proper in this Honorable Court pursuant to 28 U.S.C. §§ 1391(b), (c), (f)(1) and (3).

## FACTS COMMON TO ALL CLAIMS

### The Parties

10.     ABT is an international trader that buys and sells commodities, including food products such as powdered milk. ABT, and its principals, are part of a group of companies with more than twenty-five (25) years experience in trade with Venezuela and South America.

11.     Bariven is a wholly-owned subsidiary of Petróleos de Venezuela, S.A., the state-owned oil company of Venezuela. Bariven is the commercial procuring arm of the executive branch of the Venezuelan Government and/or Petróleos de Venezuela, S.A. Bariven is primarily responsible for procuring materials and equipment outside of Venezuela, including the United States, needed to support the importation requirements of the Government of Venezuela and of Petróleos de Venezuela, S.A.'s exploration, production and refining activities within Venezuela. Beginning in 2007, Bariven also began purchasing food commodities in the international markets for consumption in Venezuela. Bariven has a long history of doing substantial business in the United States, where its annual purchases are in the hundreds of millions of U.S. Dollars.

12.     PSI is a Delaware corporation that, together with Bariven, conducts business in the United States.

- 4 -

13.     In the last quarter of 2007, Petróleos de Venezuela, S.A. directed Bariven to purchase food commodities on the international market to address a food shortage crisis that Venezuela was experiencing.   In this respect, Bariven and PSI began dealing in food commodities with private parties in the State of Florida and elsewhere.

### The Milk Agreements

14.     In November, 2007, Defendants began jointly submitting purchase orders to ABT in Miami, Florida for large quantities of powdered milk.  At all times, PSI and Bariven acted together for the purchase of these goods from ABT and were obligated to ABT under the purchase orders.

15.     Defendants' purchase orders were for significant quantities of powdered milk ranging from 2,500 metric tons to 26,000 metric tons.   The aggregate total metric tons of the purchase orders was 32,000 metric tons.

16.     Over the course of their relationship, PSI and Bariven entered into and completed various agreements with ABT and a course of dealing was established.

17.     Specifically, after extensive negotiations between the parties, on or about November 29, 2007, Defendants jointly placed a purchase order with ABT, in Miami, Florida, for 3,500 metric tons of powdered milk, at a unit price of $4,430.00 per metric ton, for a total price of $13,505,000.00 (the "First Milk Agreement").

18.     Defendants paid ABT in full for the First Milk Agreement.

19.     On or about November 30, 2007, after further negotiations, Defendants jointly placed a second purchase order with ABT, in Miami, Florida, for 2,500 metric tons of powdered milk, at a unit price of $4,430.00 per metric ton, for a total price of $11,075,000.00 (the "Second Milk Agreement").

20.     Defendants paid ABT in full for the Second Milk Agreement.

21.     On February 22, 2008, after Plaintiffs negotiated a purchase price with Defendants, Defendants jointly placed a third purchase order with ABT, in Miami, Florida, for 26,000 metric tons of powdered milk, at a unit price of $4,750 per metric ton, for a total price of $123,500,000 (the "Third Milk Agreement").   A true and correct copy of the Third Milk Agreement is attached hereto as Exhibit A.

22.     The terms and conditions of the third purchase order were almost identical to those of the first two purchase orders.

23.     Subsequently, approximately thirty (30) days after Defendants placed the third purchase order, and after ABT had contracted with its suppliers in China to supply the powdered milk, Defendants directed Plaintiff to obtain a bond in favor of the Defendants in the amount of $37,050,000, or thirty percent of the amount of the third purchase order (the "Bond").  This new condition was not required under the terms of the third purchase order (nor under the first or second purchase orders).  Defendants threatened that if the Bond was not obtained, they would withdraw the third purchase order.

24.     ABT, being at that point in time contractually obligated to purchase the 26,000 tons of powdered milk from its Chinese supplier for the third purchase order, was left with no choice but to post the Bond at a great expense to ABT.

25.     If Defendants had advised Plaintiff prior to the issuance of the third purchase order that the Bond would be required, the costs associated with the Bond would have been included in the negotiated purchase price.

26.     Pursuant to the Third Milk Agreement, ABT agreed to provide shipments of powdered milk to Defendants and Defendants were to remit payment upon presentation of shipping documents.

27.     ABT delivered 23,000 metric tons of powdered milk to Defendants at the stated location in 2008.

28.     Defendants requested delivery of the final shipment of 3,000 metric tons powdered milk, and advanced $10,925,000 of the $14,250,000 cost of the final shipment to ABT. This advance was comprised partly from an advance Bariven and PSI made to ABT of thirty percent of the entire cost of the Third Milk Agreement and partly from a subsequent advance Bariven and PSI made to ABT which covered the purchase price of 2,000 of the 3,000 tons of powdered milk to be shipped in the final shipment.

29.     On or about January 28, 2009, however, Defendants advised ABT to stop the final shipment even though the powdered milk had already been produced.

30.     Defendants falsely advised ABT that ABT could not deliver the final shipment for three to four months because the ports to where the previous shipments by ABT and other suppliers had been delivered were too congested to handle and the Defendant lacked sufficient storage in Venezuela.

31.     Although the powdered milk had already been produced, ABT agreed to hold the final shipment for the three to four month period.  It was held at a storage facility in China.

32.     While Plaintiff was waiting to deliver the last 3,000 metric tons and while the powdered milk was held in storage for three months, in April 2009, Defendants advised ABT that it would not accept the final shipment because it suspected the powdered milk in that shipment could contain unsafe levels of melamine.

33.     Two separate companies conduct studies of the shipments sent by ABT since approximately August 2008, as well as the last 3,000 tons of powdered milk to determine whether they contained unsafe levels of melamine.

34.     Specifically, Harbin Huijiabei Foods Company, Ltd., ("Harbin"), the company that produced the powdered milk, in coordination with the Chinese government, via the General Administration of Quality Supervision, Inspection and Quarantine ("AQSIQ") and through the China Inspection and Quarantine Service ("CIQ"), tested these shipments and concluded that they did not contain melamine.

35.     Furthermore, ABT contracted the services of Borsub International which also tested those same shipments, including the last 3,000 tons, and likewise concluded that they did not contain melamine.

36.     Thus, Defendants did not have a basis for refusing to accept the final shipment.

37.     Defendants themselves allegedly conducted a study of some of the earlier shipments and claimed that they contained unacceptable levels of melamine.  Plaintiff has on numerous occasions requested copies of those studies but, to date, Defendants have failed and refused to disclose the results of their study to ABT.

38.     Instead, Defendants handed Plaintiff a list of prior shipments which it claimed were contaminated with melamine.  However, not a single one of the shipments on that list were ABT shipments.

39.     ABT tried to work with Defendants for more than one year to resolve these issues to no avail.  To that end, on numerous occasions, ABT requested meetings with representatives of the Defendants.  Defendants failed and refused to meet ABT representatives in Houston, Texas.

40.     The last 3,000 tons of powdered milk were produced by Harbin and stored in China. The shelf-life of the 3,000 tons of powered milk has now expired and it currently has no commercial use or value. Harbin is currently demanding payment from ABT for the 3,000 tons of powdered milk and for costs associated with the storage.

41.     In furtherance of its bad-faith dealings with ABT concerning the Third Milk Agreement and the Bond, Bariven has improperly and unsuccessfully attempted to collect the total amount of the Bond from the bonding company.

42.     Plaintiff has suffered damages as a result of Defendants breach of the Third Milk Agreement.

43.     ABT has suffered damages in the amount of $555,750.00 for obtaining the Bond. ABT continues to incur damages as a result of having to maintain in force the Bond.

44.     Additionally, since March 2008, ABT has incurred $9,262,500 in finance costs in connection with the Bond.

45.     As such, ABT has suffered damages in the amount of $9,262,500 for the finance costs it has incurred related to the Bond.

46.     ABT has suffered damages in the amount of $560,000 for having to pay the transportation costs of the last shipment delivered. Harbin was to pay for these costs, with monies previously advanced by ABT, however, once Defendant advised that they wouldn't accept delivery of the final shipment, Harbin refused to pay these costs and instead used those monies to offset losses on the last 3,000 tons of powdered milk.

47.     Plaintiff has also suffered damages in that it lost its representation of Harbin for the territories of Venezuela and the Caribbean.

48.    All conditions precedent to the filing of this action have been performed, waived or excused.

49.    ABT has retained counsel to represent it in this action and is obligated to pay a reasonable fee for services rendered herein.

### COUNT I
### (Breach of Third Milk Agreement)

ABT realleges paragraphs 1 - 49.

50.    Defendants materially breached the Third Milk Agreement by failing and refusing to pay $3,325,000 for the final shipment of 3,000 metric tons of powdered milk contemplated in the Third Milk Agreement; by wrongfully requiring ABT to post and maintain the Bond; by failing and refusing to pay the transportation costs of the last delivered shipment of powdered milk; and by causing ABT to lose its representation of Harbin in Venezuela and the Caribbean.

51.    As a result of Defendants' material breach of the Third Milk Agreement, ABT has suffered damages in the following amounts: (a) $9,262,500 for the finance costs of the Bond; (b) $3,325,000, excluding interest and costs, for the final shipment of the powdered milk; (c) $560,000 in transportation costs for the last shipment of powdered milk delivered; (d) $555,750 for obtaining and having to maintain the Bond; and (e) damages for the loss of its representation of Harbin for the territories of Venezuela and the Caribbean.

WHEREFORE, Plaintiff, Absolute Trading Corp., d/b/a Absolute Trading, Inc., f/k/a Absolute International Trading Corp., demands judgment against Defendants, PDVSA Services, Inc. and Bariven, S.A., jointly and severally, for compensatory damages in the amount of $13,703,250, plus damages for the loss of ABT's representation of Harbin in Venezuela and the Caribbean, together with prejudgment and post-judgment interest, costs and such other and further relief this Court deems just, equitable and proper.

## COUNT II
### (Specific Performance for Release of the Bond)

ABT realleges paragraphs 1 – 49.

52.     ABT never had an obligation to post the Bond.

53.     Nevertheless, Defendants wrongfully required ABT to post the Bond in their favor after they submitted the third purchase order.

54.     ABT was forced to either post the Bond or potentially lose the business represented in the third purchase order.

55.     As such, ABT paid the premium for the Bond, posted the Bond, and continues to pay the premium for the Bond to date.

56.     ABT has also incurred finance costs associated with the Bond.

57.     ABT is clearly entitled to release the Bond, which was wrongfully required by the Defendants in the first place.

58.     ABT does not have an adequate remedy at law.

59.     Justice requires that ABT be allowed to release the Bond.

WHEREFORE, Plaintiff, Absolute Trading Corp., d/b/a Absolute Trading, Inc., f/k/a Absolute International Trading Corp., demands judgment against Defendants, PDVSA Services, Inc. and Bariven, S.A., jointly and severally, allowing ABT to release the Bond, and granting such other and further relief as the Court deems just, equitable and proper.

## COUNT III
### (Open Account)

ABT realleges paragraphs 1 – 49.

60.     Defendants owe ABT $3,325,000 that is due with interest according to the account attached hereto as Exhibit B.

61.     WHEREFORE, Plaintiff, Absolute Trading Corp., d/b/a Absolute Trading, Inc., f/k/a Absolute International Trading Corp., demands judgment against Defendants, PDVSA Services, Inc. and Bariven, S.A., jointly and severally, in the amount of its damages, together with pre and post-judgment interest, costs, and such other and further relief as the Court deems just, equitable and proper.

**COUNT IV**
**(Account Stated)**

ABT realleges paragraphs 1 – 49.

62.     Before the institution of this action, ABT and Defendants had business transactions between them and on June 19, 2008, they agreed to the resulting balance.

63.     ABT rendered a statement of it to Defendants, a copy of which is attached hereto as Exhibit B, and Defendants did not object to the statement.

64.     Defendants, jointly and severally, owe ABT $3,325,000 that is due with interest on the account.

WHEREFORE, Plaintiff, Absolute Trading Corp., d/b/a Absolute Trading, Inc., f/k/a Absolute International Trading Corp., demands judgment against Defendants, PDVSA Services, Inc. and Bariven, S.A., jointly and severally, in the amount of its damages, together with pre and post-judgment interest, costs, and such other and further relief as the Court deems just, equitable and proper.

Dated: this 27th day of April, 2010.

Respectfully submitted,

/s/ Carlos A. Souffront
Carlos A. Souffront
Florida Bar No.: 47775
csouffront@gray-robinson.com
Terrance W. Anderson, Jr.
Florida Bar No.: 27426
twanderson@gray-robinson.com
**GRAYROBINSON, P.A.**
1221 Brickell Avenue, Suite 1650
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
Attorneys for Plaintiff, Absolute Trading
Corp.

\372750\1 - TANDERSON - # 255328 v1

# EXHIBIT "A"

01/04 2008 16:58 FAX 02812603294        BARIVEN                          ☒001

 **PDVSA**

BARIVEN, S.A.
c/o PDVSA Services, Inc.
Purchasing Agent (BU00)
1293 Eldridge Parkway
Houston, Texas 77077
United States of America

SUPPLIER:
Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY
ESTADOS UNIDOS
POSTAL CODE: 33166 PO BOX: 0000000000
SALESPERSON / PHONE: Michael
Kobiakov/305-418-4401
FAX: 3056400662

PDVSA SUPPLIER CODE: 350014892
YOUR ACKNOWLEDGMENT: 6500043521

INSTRUCTIONS FOR SUPPLIERS :
FOR SHIPPING INSTRUCTIONS CALL:

CFR -PUERTO CABELLO/LA GUAIRA, VENEZUELA
VENEZUELA

| | |
|---|---|
| **Purchase Order** | |
| **5100061251** | |

DATE               :February,22 2008
CONTACT PERSON     :Laura Reyes
TELEPHONE USA      :(281)5006451
E-MAIL
ADDRESS:2815006286/reyeslm@psi.pdv.com

YOUR REF.   EML 2.5.08

DELIVERY DATE : December,15 2008

INSTRUCTIONS FOR FREIGHT FORWARDER:
PLEASE CONTACT SUPPLIER FOR INLAND SHIPPING DETAILS

TERMS OF DELIVERY : CFR PUERTO CABELLO/LA GUAIRA, VE
PAYMENT  TERMS.  : net 30 days                          CURRENCY : USD

P.O. General Comments
  PURPOSE OF CHANGE
  ============================
CHANGE ORDER NO. 01 IS ISSUED ON 12MAR08 BY JOSE CAMACHO
.* TO MODIFY THE DELIVERY TERMS FROM CFR - PUERTO CABELLO TO CFR - PUERTO CABELLO AND
LA GUAIRA PORT AT VENEZUELA.
.* TO MODIFY THE SHIPPING INSTRUCTIONS NOTE FOR THE SUPPLIER.

P.O. VALUE DOES NOT CHANGE

*********************************

DELIVERY SCHEDULE:  8 MONTHS DURATION
8 PARTIALS OF 3,250 METRIC TONS PER MONTH STARTING MAY 2008 AND ENDING DECEMBER 2008.

Shipping Marks
BARIVEN, S.A./PDVSA PETROLEO/MYM PUERTO LA CRUZ
5100061251/XG64004605

VAL-VALENCIA

01/04 2008 16:58 FAX  02812603294          BARIVEN                    ☑ 002

 **PDVSA**

Page: 2 of 1

SUPPLIER:
Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY

via :PUERTO CABELLO, VENEZUELA
PRIORITY LEVEL: 3
FIELD EXPEDITING: N
INSPECTION FLAG: Y-I1

Purchase Order

5100061251

| ITEM  MATERIAL | QUANTITY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|---|
| 00001 | 26,000 | Metric Ton, | ENRICHED POWDER | 4,750.00 | |
| 123,500,000.00 | | | | | |
| | 18,200,Metric Ton | Undelivered | | | |

Harmonized Tariff Code   : 0402211900

    Material purchasing text
ENRICHED POWDERED MILK WITH VITAMINS A AND D

IT IS THE PRODUCT OBTAINED BY ELIMINATING ALMOST ALL OF THE WATER THAT CONSTITUTES
MILK.

1. REQUISITES:

" MUST BE FREE OF PRESERVATIVES, NEUTRALIZERS, TOXIC SUBSTANCES OR ANY STRANGE MATTER.

" MUST BE OF WHITE YELLOWISH COLORING AND HOMOGENEOUS THROUGHOUT,CHARACTERISTIC OF
SIMILAR PRODUCTS.

" MUST BE EXEMPT OF STRANGE ODORS AND TASTE SIMILAR TO ITS NATURE.
" MUST BE A HOMOGENEOUS POWDER, CONGLOMERATED, EXEMPT OF ANY
NON-INCLUSIVE MATTER, FREE OF ANY BURNED PARTICLES AND STRANGE MATTER.


2. PHYSIOCHEMICAL REQUIREMENTS:

CHARACTERISTICS  LIMITS (%)
HUMIDITY  MAX. 3,5
FAT  MIN. 26,0  MAX. 27,0
PROTEÍNS MIN. 24,5
CHLORIDES MIN. 0,07  MAX. 0,11
ASH  MAX. 5,9
ACIDITY (G AC.LACTIC/100G) MAX. 1,35
FAT FREE MAX. 2,0
LACTOSE MIN. 34,0
INSOLUBILITY INDEX (ML) MAX. 0,5
BURNEO PARTICLES MAX. B-15N

VITAMIN A MIN. 960 (UG/100G)   MIN. 3200 (UI/100G)
VITAMIN D3  MIN. 8 (UG/100G)   MIN.320 (UI/100G)

01/04 2008 16:58 FAX 02812803294      BARIVEN                                    ☑003

 **PDVSA**                                                  Page: 3 of 1

SUPPLIER:
Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY


5100061251

| ITEM | MATERIAL | QUANTITY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL PRICE |
|------|----------|----------|------|-------------|------------|-------------|

3. MICROBIOLOGIC REQUISITES:

CHARACTERISTICS (UFC/G) LIMITS

AEROBIOS MESÓFILOS MIN. 5,0 X 103   MAX. 1,0 X 104
MOLD     MIN. 1,0 X 102   MAX. 1,0 X 103
SALMONELLA IN 25G   0
COLIFORM (NMP/G) MIN. 3   MAX. 7
S.AUREUS  MIN. 10 MAX. 1,0 X 102
LISTERIA MONOCYTOGENES EN 25G   0
ESPORA TERMOFILE MIN. 1,0 X 102   MAX. 1,0 X 103


*****************************************************
LECHE EN POLVO ENTERA CON VITAMINAS A Y D.
NORMA CONSULTADA COVENIN 1481:2001.

REQUISITOS:

" DEBE ESTAR LIBRE DE PRESERVATIVOS, NEUTRALIZANTES, SUSTANCIAS TOXICAS Y MATERIAS
EXTRAÑAS.

" DEBE SER DE COLOR BLANCO AMARILLENTO HOMOGÉNEO, CARACTERÍSTICO DEL PRODUCTO.

" DEBE ESTAR EXENTO DE OLORES Y SABORES EXTRAÑOS A LA NATURALEZA DEL MISMO.

" DEBE SER UN POLVO HOMOGÉNEO, AGLOMERADO, EXENTO DE GRUMOS COMPACTOS, LIBRE DE
PARTÍCULAS QUEMADAS Y DE MATERIA EXTRAÑA.


        Additional technical specs.
ENRICHED POWDER MILK WITH VITAMINS A & D
IN 25 KG. KRAFT STANDARD PACKAGE - SEGUN APROBADO POR EL COMITE EVALUADOR DE PDVAL.

ACCORDING TO THE VENEZUELAN COVENIN STANDARDS
NO ADDITIVES ARE ALLOWED, ONLY FRESH MILK WILL BE ALLOWED TO PRODUCE THE PRODUCT

PLANT: HARBIN HIUJIABEI FOODS CO. LTD.
NO. 3 QIANSHAN FOUR STREET, NANGAGN DISTRICT
HARBIN, CHINA, TEL: 451-89024733

01/04 2008 16:58 FAX  02812803294        BARIVEN                           ☒004

 **PDVSA**                                            Page: 4 of 1

SUPPLIER:
Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY

Purchase order
5100061251

| ITEM | MATERIAL | QUANTITY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL PRICE |
|------|----------|----------|------|-------------|------------|-------------|

ESPECIFICACIONES TECNICAS DE LA PLANTA:
Humedad: Max. 3.5%
Contenido de grasa: Min. 26% / Max 27%
Contenido de ProteEnas minima: 24.5%
Proteinas en extracto seco y magro minimo: 34.7%
Lactosa minimo: 34%
Cloruros % p/v: min 0.07- max 0.11
Cenizas % p/p: max 5.9
Acidez ml NaOH1 Ni/1000g- max 15
Acidez g Ac Lactico/100g - max 1.35
Grasa libra % p/p: max 2
Indice de insolubilidad ml- max 0.5
Particulas quemadas y sedimento Disco mg/I - max B-15
Vitamina A Ut/ Min 3.200
Vitamina A gretinol/100g - Min 960
Vitamina D3 UI/100g - Min 320
Vitamina ugcalcifero/100g - Min 8
Dispersabilidad ( leche en polvo instantanea)% - Min 85.0
AerObicos mesofilos (ufc/g)- Min 5.0X10(3)  Max 1.0X10(4)
Coniformes ( NMP/g) - Min <3.0  Max 7.0
Listeria monocytogenes en 25 g(*) - 0
Staphylococcus aureus (ufc/g) -Min 10.0 Max 1.0 X10(2)
Salmonellas en 25g -0
Mohos (ufc/g) - Min 1.0X10(2)  Max 1.0X10(3)

*** ***

| | |
|---|---|
| Gross Price | 123,500,000.00 |
| Net value | 123,500,000.00 |
| **Purchase order total value** | **123,500,000.00** USD |

01/04 2008 16:58 FAX  02812803294          BARIVEN                              ☑005



Page: 5 of 1

SUPPLIER:
Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY



5100061251

P.O. General terms

  *** DOC. 80021, REV. E (08.13.2007)   ***

DELIVERY
=========
8 MONTHS (3,250 METRIC TONS PER MONTH) STARTING MAY 2008 AND ENDING DECEMBER 2008.

LINE ITEMS MUST SHIP COMPLETE.
PARTIALS ARE ALLOWED- PER SCHEDULE ABOVE

ESTIMATED WEIGHT:   SELLER TO ADVISE

NEW MATERIAL
============
MATERIAL MUST BE IN NEW CONDITION, FREE FROM DEFECTS AND SUITABLE FOR ANY SERVICE SPECIFIED, UNLESS
OTHERWISE STATED.

ORDER ACKNOWLEDGEMENT
====================
SELLER MUST ACKNOWLEDGE RECEIPT OF THIS FAX/EDI PURCHASE ORDER WITHIN 48 HOURS A.R.O. VIA E-MAIL, AND
ADVISE AND CONFIRM SHIPPING DATE, BY PROVIDING THE FOLLOWING INFORMATION:

  - OUR REFERENCE (PO) NUMBER _____
  - CONFIRMED DELIVERY DATE _____
  - YOUR REFERENCE NUMBER _____
  - YOUR EXPEDITING CONTACT _____
  - TELEPHONE NUMBER _____
  - FACSIMILE NUMBER _____
  - DRAWINGS SUBMITTAL DATE _____  (as applicable)

ORDER ACKNOWLEDGEMENT MUST BE E-MAILED WITH OUR P.O. NUMBER IN THE SUBJECT LINE, TO PDVSA SERVICES
EXPEDITING DEPARTMENT AT OAINBOX@PSI.PDV.COM

01/04 2008 16:58 FAX 02812803284          BARIVEN                                    006

 **PDVSA**

Page: 6 of 1

SUPPLIER:
Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY

**5100061251**

Terms of delivery

GENERAL INSTRUCTIONS:

AIR FREIGHT VIA MAIQUETIA:
1. Consign Master AWB to: Forwarder's office in Maiquetia.
2. Consign House AWB to: First line of shipping marks.

Notify Party :
Clover Internacional C.A.

Address:
Aduana Aérea de Maiquetía Detrás del Almacén de Avensa y  al lado de Alitalia Carga. Maiquetía, Estado Vargas.
Venezuela. / Fax: 01158(212)331-3786
Attn: (Operations Manager)
Telephone: 01158(212)331-3301
Email:amerilis.galdona@clovergroup.com.ve/ciganal@pdvsa.com

Contacts:
Yubelis Munoz - yubelis.munoz@clovergroup.com.ve / 58(212)331-1103
Onelia Torres - onelia.torres@clovergroup.com.ve / 58 212 - 331-3304
Liliana Cigana - Ciganal@pdvsa.com / 0212-958- 04.90/ 0416- 980.99.04
Grazia Fiore   Graziaf@pdvsa.com / 0212-958-04.900 / 0414-235.98.37

OCEAN FREIGHT VÍA LA GUAIRA:
Consign B/L as shown on the first line of the purchase order shipping marks.

Notify Party :
Clover Internacional C.A.

Address:
Aduana Aérea de Maiquetía detrás del Almacén de Avensa y  al lado de Alitalia Carga.Maiquetía, Estado Vargas.
Venezuela. / Fax: 01158(212)331-3786
Attn: (Operations Manager)
Phone: 01158(212)331-3301
Email: amerilis.galdona@clovergroup.com.ve/ciganal@pdvsa.com

Contacts:
Yubelis Munoz - yubelis.munoz@clovergroup.com.ve / 01158(212)331-1103
Onelia Torres  onelia.torres@clovergroup.com.ve / 01158(212)331-3304
Liliana Cigana Ciganal@pdvsa.com / 0212-958-04.90/0416-980.99.04
Grazia Fiore   Fioreg@pdvsa.com / 0212-958-04.900414-235.98.37

OCEAN FREIGHT VÍA PUERTO CABELLO:
Consign B/L as shown on the first line of the purchase order shipping marks.

Notify Party:
Clover Internacional C.A.

Address:
Calle Mariño con Calle Guevara,
Edificio Centro Profesional Gaba, Oficina 3.
Puerto Cabello, Estado Carabobo
Venezuela. / Fax: 01158(242)362-0210
Attn: Luis Vera (Customs Coordinator) / ciganal@pdvsa.com
Telephone: 01158(242)367-6010/381-4244

Contacts:
Luis Vera - luis.vera@clovergroup.com.ve / 01158(242)357-5010/361-4244
Iliana Vasquez - iliana.vasquez@clovergroup.com.ve / 01158(241)8741157
Vanessa Diaz  vanessa.diaz@clovergroup.com.ve / 01158(241)8741157
Miroska Goitia Goitiams@pdvsa.com / 0414-235.92.80
Liliana Cigana - Ciganal@pdvsa.com /  0212-958- 04.90/ 0416- 980.99.04
Grazia Fiore - Graziaf@pdvsa.com / 0212-958-04.900 / 0414-235.98.37

EXPORT DOCUMENTS:
The following shipping documents are required by the Venezuelan Government for customs clearance. All shipments must be sent on freight prepaid basis and should be consigned in all shipping documents. AWB, B/L as follows:

1.  B/L or AWB: Consigned as shown on the first line of the purchase order shipping marks.

 **PDVSA**

SUPPLIER:
Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY

**Purchase Order**

**5100061251**

2. COMMERCIAL INVOICE
   a. Prepare one invoice per shipment per Order.
   b. The invoice should be consigned as shown on the first     line of the purchase order shipping marks.
   c. All shipper's invoices must specify the following     information:
      i.    Invoice date and number.
      ii.   PDVSA SERVICES INC. Purchase Order Number and         Requisition Number.
      iii.  Delivery terms. / Payment terms.
      iv.   Purchase Order Item Numbers as shown in Purchase         Order.
      v.    Number and description of goods.
      vi.   Tariff Number and Spanish Description, if given, for     Purchase order. If more than one is given indicate
   each one with the corresponding item.
      vii.  Gross & Net weight of commodity.
      viii. Value & Dimensions of commodity.
      ix.   County of origin.

3. INSPECTION CERTIFICATES: Agriculture exporters are frequently   required to provide a certificate attesting to the condition  of
the goods shipped.
4. PHYTOSANITARY CERTIFICATE: This certificate must be       issued by a certifying official (Federal, State or Local).
5. CERTIFICATE OF ORIGIN: This certificate must be issued by a     certifying official.

Original Export documentation:
Documents for all ocean shipments are required to be in possession of Bariven-Aduanas seven (07) working days prior to the
arrival of the freight at the first Venezuela Port of unlading. Att: Liliana Cigana / Grazia Fiore.

Send the required originals to:
BARIVEN - ADUANAS PDVSA AGRICOLA
CENTRO EMPRESARIAL EUROBUILDING
PISO 10 - OFIC. 22
Phone: 58212-958-04.90 - Fax: 58212-958-00.20

Perishable Shipments:
-   All documents associated with perishable goods must specify the     temperature that the goods must be kept at in both
Celsius and    Fahrenheit scales.
-   The documents should indicate directly whether the goods       should be REFRIGERATED or FROZEN. (Preferred temperature
should be clearly marked on the cargo)
-   Perishable and non perishable cargo must not be shipped  together on the same bill of lading or in the same consolidation.
Each   category of material must be shipped   and documented separately.

REQUIRED EXPORT DOCUMENTS AND DISTRIBUTION:

| (OCEAN) DOCUMENT | CUSTOMS BROKER / PSI |
|---|---|
| Original Bill of Lading | 4/1 |
| Copies of B/L | 2/1 |
| Commercial Invoice Original | 4/1 |
| Commercial Invoice copies | 2/1 |
| Export packing list | 4/1 |
| Certificates (if any) | 2/1 |

| (AIR) DOCUMENT | CUSTOMS BROKER / PSI |
|---|---|
| Original Airway Bill | 4/1 |
| Copies of AWB | 2/1 |
| Commercial Invoice Original | 4/1 |
| Commercial Invoice copies | 2/1 |
| Export packing list | 4/1 |
| Certificates (if any) | 2/1 |

Note: SHOW PURCHASE ORDER SHIPPING MARKS ON ALL DOCUMENTS.

PACKAGING AND LABELING:

AS OF APRIL 2008 WOODEN PACKING TO VENEZUELA MUST SHOW A MARKING THAT THE WOOD WAS EITHER TREATED
WITH METHYL BROMIDE OR HAS BEEN HEAT TREATED AND DOES NOT PRESENT/DISPLAY EVIDENCE OF QUARANTINE PESTS.
ALL WOOD USED IN THE BOXING/CRATING, PALLETIZING, SKIDDING, OR BLOCKING AND BRACING OF THE MATERIAL ON THIS
PURCHASE ORDER MUST HAVE UNDERGONE SUFFICIENT PROCESSING OR TREATMENT IN COMPLIANCE WITH ISFM 15 OF THE
INTERNATIONAL PLANT PROTECTION CONVENTION (IPPC) ENTITLED "GUIDELINES FOR REGULATING WOOD PACKAGING
MATERIAL IN INTERNATIONAL TRADE". ALL WOOD USED SUBJECT TO THIS REGULATION SHALL BE MARKED AS SPECIFIED IN
ANNEX II OF THE REGULATION. NON-CONFORMANCE WILL RESULT IN CONFISCATION OF THE ENTIRE SHIPMENT BY
VENEZUELAN PORT/AIRPORT AUTHORITIES. FOR SPECIFIC DETAILS, PLEASE REFER TO THE IPPC WEBSITE: WWW.IPPC.INT.

01/04 2008 16:58 FAX  02812603294        BARIVEN                                    @008

 **PDVSA**

Page: 8 of 1

SUPPLIER:

Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY

Purchase Order

5100061251

ALL CARGO DESTINED TO VENEZUELA MUST BE SUFFICIENTLY PACKED TO WITHSTAND THE RIGORS OF INTERNATIONAL
TRANSPORT. PACKAGING MUST RESIST: THE ROUGH HANDLING DURING LOADING AND UNLOADING; COMPRESSION FROM
THE OVERHEAD WEIGHT OF OTHER CONTAINERS; IMPACT AND VIBRATION DURING TRANSPORTATION; AND HIGH HUMIDITY
DURING PRECOOLING, TRANSIT, AND STORAGE.

A. PACK MATERIALS IN ONE OF THE FOLLOWING WAYS:
- SHIPPING UNITS: EACH UNIT OF FREIGHT, TENDERED TO A CARRIER   AS LISTED AND DEFINED ON BILL OF LADING.  DO
NOT COMBINE    DIFFERENT ORDERS IN ONE SHIPPING UNIT.
- INTERIOR PACKAGES: EACH UNIT PACKAGE COMBINED WITH OTHER     PACKAGES TO MAKE-UP A SHIPPING UNIT. THEY
MUST CONSIST OF   ONLY ONE ORDER ITEM (ANY QUANTITY).

B. PACKING LIST: ATTACHED TO EXTERIOR OF AT LEAST ONE SHIPPING U  NIT. ADDITIONAL PACKING LISTS MUST BE INSIDE
OF ENCLOSED S HIPPING UNITS.

MARKING: (MUST BE PERMANENT/WATERPROOF)
A. INTERIOR PACKAGES: MARK OR TAG WITH ORDER NUMBER.
- ITEM NUMBER.
B. SHIPPING UNITS:  MARK ON TWO ADJACENT SIDES OR TAG:
- "SHIPPING MARKS" AS SPECIFIED IN THE PURCHASE ORDER          /ORDER AND ITEM NUMBER (IF A ONE-ITEM
SHIPPING UNIT)                /OVERALL DIMENSIONS IN CENTIMETERS / GROSS WEIGHT IN      KILOGRAMS
C. SHIPPING UNIT NUMBERS: NUMBER EACH SHIPPING UNIT BEGINNING   WITH NUMBER 1 IN MULTIPLE SHIPMENTS, NUMBER
UNITS CONSECUTIVELY INDICATING TOTAL UNITS IN THE LOT (I.E. 1 OF  4, 2OF 4, ETC.). ENCLOSED ATTACH PACKING LIST
TO SHIPPING  UNIT NUMBER 1.
D. PACK ING LIST:  SHOW FOR EACH ORDER ITEM LISTED:
- PURCHASER'S STOCK NUMBER (IF GIVEN IN ORDER) / GOOD'S   DESCRIPTION.
E. NUMBER:
- SHIPPING UNIT NUMBER (IF MORE THAN ONE). / "SHIPPING      MARKS" AS SPECIFIED IN THE PURCHASE ORDER.

F. FOR PERISHABLE AND NON-PERISHABLE FOOD PRODUCTS:

        PLEASE INDICATE THE FOLLOWING:

STORAGE TEMPERATURE_____ (INDICATE ° F OR ° C)

REFRIGERATED OR FROZEN OR DRY (CHOOSE ONE)

PLEASE USE COLORED LABELS TO CATEGORIZE EACH CASE/CRATE:

GREEN: REFRIGERATED
BLUE: FROZEN
RED: DRY/NON PERISHABLE

PRE-SHIPMENT ADVICE:
PRE-ALERT MUST SHOW DEPARTURE DATE AND PORT CITY, PORT OF DESTINATION AND ETA, VESSEL NAME AND VOYAGE
NUMBER, BILL OF LADING NUMBER AND DATE, NAME OF SHIPPING LINE, PURCHASE ORDER NUMBER AND REQUISITION
NUMBER (SECOND LINE OF P.O. SHIPPING MARKS).

THE FOLLOWING ATTACHMENTS MUST BE INCLUDED AS WELL:
1. EXECUTED BILL OF LADING.
2. EXPORT PACKING LIST AND COMMERCIAL INVOICE.
4. PHYTOSANITARY CERTIFICATES
6. CERTIFICATE OF ORIGIN
8. OTHER CERTIFICATES REQUIRED.

PRE-SHIPMENT ADVICE AND COPY OF EXPORT DOCUMENTS TO:
PDVSA (TRAFFIC & CUSTOMS) - VENEZUELA
Nº NAME                    EMAIL
1. LILIANA CIGANA          CIGANAL@PDVSA.COM
2. FERNANDO VELASQUEZ      VELASQUEZFN@PDVSA.COM
3. MARIA ROBLES            ROBLESMS@PDVSA.COM
4. JUAN CARLOS RIVAS       ELBOTIJAJC@CANTV.NET
5. KARIN RODRIGUEZ         RODRIGUEZKR@PDVSA.COM
6. DONNATY DURAN           DURANDS@PDVSA.COM
7. ASDRUBAL DIAZ           DIAZAAL@PDVSA.COM
8. GRAZIA FIORE            FIOREG@PDVSA.COM
8. DUBRASKA RODRIGUEZ      DUBRASKAAR@GMAIL.COM
10. IRANOR ANDRADE         ANDRADEIR@PDVSA.COM
11. JOSE ROMERO            JOSEROMERO@ANDROMEDA.COM.VE
12. YDANNA SALAZAR         YOANNASALAZAR@ANDROMEDA.COM.VE
13. ANGEL RODRIGUEZ        ANGELRODRIGUEZ@ANDROMEDA.COM.VE

01/04 2008 16:59 FAX 02812803294          BARIVEN                          ☒008

 **PDVSA**

Page: 9 of 1

SUPPLIER:

Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY

14. OSMAR NIETO          OSMARYNIETO@GMAIL.COM
15. JUAN CARLOS RIVAS          ELBOTIJAJC@CANTV.NET ONLY SHIPMENTS
16. MIROSKA GOITIA          GOITIAMS@PDVSA.COM ONLY SHIPMENTS VIA
17. IRANOR ANDRADE          ANDRADEIR@PDVSA.COM

PSI (LOGISTICS DEPARTMENT) - HOUSTON
Nº NAME          EMAIL          PHONE
1. JUAN JOSE BASTARDO  BASTARDOJJ@PSI.PDV.COM     (281) 5886474
2. PSI DATA BASE          DOCUMENT@PSI.PDV.COM

| Purchase Order |
|---|
| 5100061251 |

VIA LA GUAIRA
PUERTO CABELLO.

Terms of payment

PROGRESS/ADVANCE PAYMENT INVOICES
========================================
30% UPON PO PLACEMENT
70% AGAINST PRESENTATION OF SHIPPING DOCUMENTS FOR EACH PARTIAL
SHIPMENT (BILL OF LADING, COMMERCIAL INVOICE, INSPECTION RELEASE REPORT, ETC.)

PROGRESSIVE PAYMENTS SHALL BE BASED ON THE ORIGINAL PURCHASE ORDER VALUE.  ANY ADDITIONS TO THE
PURCHASE ORDER VALUE SHALL BE INCLUDED IN THE SUPPLIER'S FINAL INVOICE.

01/04 2008 16:59 FAX  02812603294        BARIVEN                                    🖾010

 **PDVSA**

Page: 10 of 1

SUPPLIER:
Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY

Purchase Order

**5100061251**

Requir docs/Inspec/Field Exped

REQUIRED WITH THIS ORDER:
1. CERTIFICATE OF COUNTRY OF ORIGIN
2. PHYTOSANITARY CERTIFICATE

        FIELD INSPECTION REQUIREMENT
        (DOC. TR050, REV.F, 05-Feb-08 )

1. THIS PURCHASE ORDER OR RFQ (WHEN APPLICABLE) HAS BEEN CODED FOR FIELD TECHNICAL INSPECTION PRIOR TO
SHIPMENT. THIS MEANS A QUALIFIED INSPECTOR WILL INSPECT THE EQUIPMENT FOR COMPLIANCE TO QUOTE, PURCHASE
ORDER, AND ANY OTHER APPLICABLE INDUSTRY STANDARD OR SPECIFICATION.
2. PRODUCT, EQUIPMENT, OR MATERIAL INSPECTION MUST BE PERFORMED BEFORE PACKAGING FOR SHIPMENT. THE
PURCHASER'S INSPECTION DOES NOT RELIEVE THE MANUFACTURER OR THE SELLER FROM COMPLIANCE TO ALL PURCHASE
ORDER REQUIREMENTS.
3. PRODUCT, EQUIPMENT OR MATERIAL MUST NOT LEAVE YOUR FACILITIES UNTIL THE ASSIGNED INSPECTOR OR
DESIGNATED INSPECTION AGENCY HAS ISSUED A RELEASE AUTHORIZING SHIPPING OF THE PRODUCT OR EQUIPMENT.
4. THE VENDOR IS REQUIRED TO PROVIDE THE FOLLOWING INFORMATION:
4.1 LOCATION OF WHERE INSPECTION CAN BE PERFORMED.
4.2 CONTACT NAME, PHONE NUMBER, & EMAIL ADDRESS OF THE PROJECT MGR.
5. DOCUMENTATION REQUIREMENTS
( THIS NOTE APPLIES TO TECHNICAL DOCUMENTS NOT INCLUDING INVOICES OR SHIPPING DOCUMENTS)
5.1. ONE COPY OF ALL THE REQUIRED DOCUMENTS MUST SHIP WITH THE EQUIPMENT. THIS INCLUDES TECHNICAL
DOCUMENTS SUCH AS MATERIAL TEST REPORTS, NONDESTRUCTIVE TEST REPORTS, QA CERTIFICATES/CONFORMANCE,
PRINTS, MECHANICAL OR PERFORMANCE TEST RESULTS, AND OTHER APPLICABLE DOCUMENTS.
5.2 TWO HARD COPIES (DATABOOKS) AND TWO ELECTRONIC COPIES (CD'S OR VIA EMAIL (AS APPLICABLE)) MUST BE SHIP
TO:
PDVSA SERVICES, INC. // CITGO BLDG
ATTN: PETER BERNSTEIN N2061
1293 ELDRIDGE PKWY
HOUSTON, TX. 77077
5.3 FOR DELIVERY OF DOCUMENTS ELECTRONICALLY, SEND THEM TO: TECHDOCS@PSI.PDV.COM
5.4 THE PDVSA SERVICES PURCHASE ORDER NUMBER MUST BE LISTED ON THE SUBJECT LINE OF THE EMAIL. IF PARTIAL
DOCUMENTATION IS SUBMITTED, THE EMAIL MUST CLEARLY IDENTIFY TO WHICH LINE ITEM(S) THE DOCUMENTS BELONG
TO.
5.5 THE PO NUMBER AND THE PO ITEMS MUST BE CLEARLY IDENTIFIED IN EACH DOCUMENT.
*****************************
5.6 FOR PURCHASE ORDERS PLACED IN EUROPE OR WHERE THE MATERIAL IS COMING FROM EUROPE, ELECTRONIC
DOCUMENTS CAN BE SUBMITTED TO: INSPECTION@PDVSA.NL
5.7 Send hard copies to:
PDVSA SERVICES BV
ATTN. TECHNICAL SERVICES DEPARTMENT
PRESIDENT KENNEDYLAAN 19
2517 JK THE HAGUE
THE NETHERLANDS
***************************
6. ANY QUESTIONS REGARDING THIS INSPECTION REQUIREMENT, FORWARD EMAIL TO prodriguez@psi.pdv.com or
bernsteinp@psi.pdv.com or lgurdez@psi.pdv.com. For purchase orders placed in Europe, please contact: inspection@pdvsa.nl
------------------------------CERTIFICATE OF COUNTRY OF ORIGIN
PHYTOSANITARY CERTIFICATE

01/04 2008 16:59 FAX 02812603294          BARIVEN                                    ☑011

 **PDVSA**

Page: 11 of 12

SUPPLIER:
Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY

Purchase Order
5100061251

IMPORTANT INSTRUCTIONS TO SELLER
(Doc. Z_ME_PO_GEN_BU00, rev.7, 11-14-2005)

If this Document is issued from BARIVEN, S.A. c/o PDVSA Services, Inc., follow instruction:

INSTRUCTION

Unless covered by a Blanket Purchase Agreement, this purchase order is subject to the present standard BARIVEN, S.A. c/o
PDVSA Services, Inc. Terms and Conditions which are already in your possession. In the event that you do not have the above
mentioned Terms and Conditions, please advise us. Otherwise, acceptance of this purchase order signifies your
acknowledgement, understanding, and acceptance of said Terms and Conditions.

If this order is covered by an Outline Agreement, the Terms and Conditions of the Outline Agreement number mentioned on the
item(s) of this purchase order apply to this document.

Seller must acknowledge receipt of this purchase order within five days A.R.O. and must advise, or confirm, seller's shipping date.
This acknowledgement is to be sent to PDVSA Services Inc., Expediting Department Attn. Mrs Gloria Robinson

Assignment of Credit Facility:
This purchase order may be selected for financing through a credit facility. Seller may be required to provide additional information
or documentation required by the financial institution. If this is the case, our Finance Department will send further instructions.

Packing, Marking, Invoicing and Shipping Instructions:

As of April 2006 wooden packing to Venezuela must show a marking that the wood was either treated with methyl bromide or
has been heat treated and does not present/display evidence of quarantine pests. All wood used in the boxing/crating, palletizing,
[illegible] in the material on this Purchase Order must have undergone sufficient processing or treatment in
[illegible] Convention (IPPC) entitled "Guidelines for Regulating Wood Packaging
[illegible] all wood subject to this regulation shall be marked as specified in Anex II of the regulation.
Non-conformance will result in confiscation of the entire shipment by Venezuelan port/airport authorities. For specific details, please
refer to the IPPC website: www.ippc.int

Do not dispatch until you have read and understood our packing, marking, invoicing, and shipping instructions for sellers, as
follows:
1. [illegible] domestic deliveries FOB/FCA to our USA forwarders, FOB Seller's Plant, Exworks, from North America and Mexico, please
use instructions on standard note BO010, attached to our purchase order.
2. For International Ocean Freight deliveries to Venezuela by the Seller, use instructions on the applicable standard notes
[illegible] BO065/BO069, attached to our purchase order.
3. For International Air and Ocean Freight deliveries to Curacao by the Seller, use instructions on note BO042, attached to our
purchase order.
4. For International Air Freight deliveries by the seller to Venezuela via Maiquetia, use instructions on the applicable standard [illegible]
[illegible], attached to our purchase order

These forms, an integral part of this document, are already in your possession, extra copies available on request, from Juan Jose
Bastardo at: email: bastardojj@psi.pdv.com, or ph. 281.588.6474

General Invoicing Instructions

Follow each of the applicable instructions attached to the respective purchase order, because they will change according to the
agreed-to delivery terms.

Your Bank Account and Routing Information must be included on your invoice. All payments are processed via "ACH" (Automatic
[illegible]

Seller will send Invoices to:

BARIVEN, S.A.
[illegible]
P.O. Box 4403
Houston, Texas 77210 USA
Attn: Accounts Payable
Contact Person: Tim Marshman.
[illegible]

If using courier services, please use the street address:

BARIVEN, S.A.
[illegible]
1293 Eldridge Parkway,
Houston, Texas 77077 USA
Attn: Accounts Payable
Contact Person: Tim Marshman.

01/04 2006 16:59 FAX  02812603284          BARIVEN                    ☑012

 **PDVSA**

Page: 12 of 12

SUPPLIER:
Absolute Trading Inc.
8140 NW 74th Ave. Suite 9
MEDDLEY

| Purchase Order |
| --- |
| 5100061251 |

Phone: (281) 588-5253; Fax: (281) 682-7578

We require one original invoice with attached copies of your packing list and all supporting documents when charges other than material costs have been required by the Buyer and quoted by the Seller, such as inland Freights, Over Time, Expert Packing, Special Handling, etc.

Please show our Purchase Order (PO) number and shipping marks on all invoices. Our standard invoice processing is, upon delivery in accordance with PO delivery terms, 100% net 30 days after receipt and approval of your invoice, unless otherwise specified in the Purchase Order.

DESTINATION CONTROL STATEMENT:

According to U.S. Export Administration Regulations, Chapter 15.CPR.
"These commodities, technology or software will be exported from the United States in compliance with the Export Administration Regulations. Diversion contrary to U.S. law is prohibited." Include Agent's license per all ship marks in the Purchase Order.

The PDVSA is required for all exports from the United States of items on the Commerce Control List that are not classified as EAR99. This party is responsible for preparation of the invoice and on the bill of lading, the freight, or other export control documents responsible. The equipment from its point of origin in the United States to the ultimate consignee or end-user in any jurisdiction for sale, or to the DoD.

NOTE TO SUPPLIERS

... will not be processed unless all amount or quality documents are provided.

Bariven, S.A. - C/O. PDVSA Services, INC.
Purchasing Agent

# EXHIBIT "B"



# ABSOLUTE TRADING

8140 NW 74 Ave., Suite 9 ● Medley, FL 33166 USA ● 305-418-4588 Phone ● 305-640-0662 Fax

PDVSA VENDOR No. 350014892

**INVOICE No.** 007/2008

**DATE** JUNE 19 2008

Bill To:
**BARIVEN S.A.**
c/o PDVSA SERVICES, INC.
1293 Eldridge Parkway
Houston, TX. 77077

Ship To:
**BARIVEN S.A.**
c/o PDVSA PETROLEO
MYM PUERTO LA CRUZ

| P.O. Date | Purchase Order | Delivery Terms | Terms | | Written By |
|---|---|---|---|---|---|
| 2/22/2008 | 5100061251 / XG64004605 | As Agreed | 30% In Advance / 70% Against B/L | | Michael Kobiakov |

| Line # | Order Qty | Part Number | Description | Unit | U/M | Extended Price |
|---|---|---|---|---|---|---|
| 1 | 1000 TM | | WHOLE MILK TYPE "A" IN POWDER | $ 4,750.00 | M/T | $4,750,000.00 |
| | | | Packed In Bags of 25Kg | | | |
| | | | 1,000 Bags x 40' Container | | | |
| | | | 40,000 Bags 1000 MT | | | |
| | | | 40 x 40' Containers | | | |
| | | | | | | |
| | | | Harmonized Tariff Code 0402101000 | | | |
| | | | Origin: China | | | |
| | | | Factory: QINGDAO JINLIDA TRADING CO. LTD | | | |
| | | | Sanitary Authorization: | | | |
| | | | A-91.713 from Ministry of Health from | | | |
| | | | BOLIVARIAN REPUBLIC OF VENEZUELA | | | |
| | | | | | | |
| | | | Wire Transfer to: | | | |
| | | | ABSOLUTE INTERNATIONAL TRADING, | | | |
| | | | WACHOVIA BANK | | | |
| | | | 5880 BIRD ROAD, MIAMI, FL. 33155 | | | |
| | | | ROUTING/ABA # 06300021 | | | |
| | | | ACCOUNT # 2000041565133 | | | |
| | | | SWIFT CODE PNBPUS33 | | | |
| | | | | | | |
| | | | P.O 5100061251/XG64004605 | | | |
| | | | | | | |
| | | | PRIORITY LEVEL: 3 | | | |
| | | | FIELD EXPEDITING: N | | | |
| | | | INSPECTION FLAG Y-I1 | | | |
| | | | | | | |
| | | | SHIPMENT OF   1000 MT FROM 26000 MT | | | |
| | | | B/L GSCLTJ0806011 / COSU6010722070 | | | |

ABSOLUTE INTERNATIONAL TRADING CORP.

**SUBTOTAL:** $   4,750,000.00

**RECEIVED 30% IN ADVANCE** $   1,425,000.00

**TOTAL DUE:**   $3,325,000.00

MICHAEL KOBIAKOV

Page   1 of 1